JACOBS, Appellant, v. JACOBS MERCANTILE CO. et al.,
Respondents.

(No. 2,579.)

(Submitted June 29, 1908. Decided July 18, 1908.)

[96 Pac. 723.]

*Receivers—Vacation of Order Appointing—Appeal—Waiver—
Appointment — Insufficient Grounds — Evidence — Review—
Power of Appointment—How to be Exercised.*

Receivers—Appointment Without Notice—Vacation of Order—Renewal of Motion—Appeal—Waiver.
1. Where, immediately after the vacation of an order appointing a receiver, without notice, plaintiff filed an amended complaint and made a second motion for the appointment of such an officer, and upon the hearing of that motion the facts in the case were disclosed to the court and the motion denied, she, by making the second motion and showing the facts, waived any right she may have had to complain of the action of the court in vacating the first order, even assuming that she had made allegations sufficient in her first complaint to entitle her to the appointment of a receiver without notice.

Same—Refusal to Appoint—Trivial Grounds.
2. On an application of a stockholder in a mercantile corporation for the appointment of a receiver for the concern a court of equity would not be justified in attaching any importance to such trivial matters, standing alone, as that an assistant manager had taken two skirts of the value of $5.50 each from the stock and had neglected to either pay for the same or have them charged to himself, that he had paid a personal claim of $1.80 out of the company's funds without charging the same to his account, and that he appropriated a cord of wood of the value of $6.00, belonging to the corporation, without paying for it.

Same—Appointment—Insufficient Grounds.
3. The fact that the directors of a mercantile corporation disagreed among themselves as to the expediency of conducting the business on a cash or credit basis, was not sufficient to warrant a court in appointing a receiver.

Corporations—Directors—Scope of Duty.
4. Directors of a corporation, when acting within the scope of their authority, are bound only to the exercise of good faith and the use of their best judgment in the conduct of the affairs of the company.

Receivers—Refusal to Appoint—Evidence—Review.
5. Evidence examined and *held*, that the court did not abuse its discretion in refusing to appoint a receiver for a mercantile corporation on the application of a stockholder.

Same—Power to Appoint—How to be Exercised.
6. The power to appoint a receiver should be exercised with great care and the utmost caution, and even upon a strong showing the authority must be used with conservatism and the remedy resorted to only in cases of emergency.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

ACTION by Jean Jacobs against the Jacobs Mercantile Company and others. From an order vacating an order appointing a receiver without notice, and an order denying a subsequent motion for the appointment of a receiver, plaintiff appeals. Affirmed.

*Messrs. Galen & Mettler,* for Appellant.

The court exercised its discretion when it made the original order appointing the receiver, and, unless that discretion was abused by the court in making its order, it had no discretion to set aside that order upon the motion of defendants upon the same proof. It is well settled in this state that a receiver may be appointed for a corporation at the suit of a minority stockholder, pending an investigation of fraud and mismanagement against the trustees. (*State* v. *District Court,* 22 Mont. 220, 56 Pac. 219; *State* v. *District Court,* 15 Mont. 324, 48 Am. St. Rep. 682, 39 Pac. 316, 27 L. R. A. 392.) The court will appoint a receiver where it is evident that a continuation of the business will be impracticable or inequitable. (Cook on Corporations, pp. 19-22; *Forrester* v. *Boston etc. Co.,* 22 Mont. 430, 56 Pac. 868.) Numerous breaches of official duties on the part of the directors of the corporation are alleged in the complaint, and it has been held that in such case the stockholders are entitled to relief. (*Coombs* v. *Barker,* 31 Mont. 526, 79 Pac. 1.) It has also been held that where the directors of a corporation have misappropriated the funds of the company and created fraudulent debts, a stockholder may file a bill to set aside all the transactions and compel the directors to account and to wind up the company. (*Jellenick* v. *Huron etc. Co.,* 177 U. S. 1, 20 Sup. Ct. 559, 44 L. Ed. 647.) Suit may be brought by a stockholder on behalf of his corporation against the directors and others for frauds, wrongs and breaches of trust and for the recovery from them of money of which the

corporation has been defrauded, and the corporation be joined as a defendant. (*Beach* v. *Cooper,* 72 Cal. 99, 13 Pac. 161; see, also, *Hall* v. *Neukirk,* 85 Pac. 485.)

The testimony offered on behalf of the plaintiff showed that the defendant directors, Adolph Jacobs and Leopold Flatow, at a meeting attended only by themselves, attempted to vote salaries to themselves, and it has been held that this cannot legally be done. (*McConnell* v. *Combination M. & M. Co.,* 31 Mont. 563, 79 Pac. 248.)    Directors of a corporation cannot charge to the corporation expenses incurred by them in defending a suit brought by the minority of the stockholders against them for a fraudulent misappropriation of the company's funds, although the company is made a nominal defendant. (*McConnell* v. *Combination M. & M. Co., supra.*)    Directors cannot, even under a by-law authorizing it, vote a salary to one of their number when the vote of such director is necessary to make up a quorum.    (*Ibid.*)

A director is entitled to notice of a meeting to elect a president.    Undue haste and failure to give notice will suffice to set the election aside. (*State* v. *Smith,* 15 Or. 98, 14 Pac. 814, 826; *Singer* v. *Salt Lake etc. Co.,* 17 Utah, 143, 70 Am. St. Rep. 773, 53 Pac. 1024.)

*Messrs. McConnell & McConnell,* and *Messrs. Wight & Pew,* for Respondents.

A court will not appoint a receiver to wind up the affairs of a corporation at the suit of a stockholder, especially on the ground of insolvency. (*Neall* v. *Hill,* 16 Cal. 145, 76 Am. Dec. 508; *French Bank Case,* 53 Cal. 495; *Mason* v. *Supreme Court,* 77 Md. 483, 39 Am. St. Rep. 433, 27 Atl. 171; *People's Home Sav. Bank* v. *Superior Court,* 103 Cal. 27, 36 Pac. 1015; *Wallace* v. *Pearce-Wallace Pub. Co.,* 101 Iowa, 313, 63 Am. St. Rep. 389, 70 N. W. 216, 38 L. R. A. 122; *Vila* v. *Grand Island etc. Co.,* 68 Neb. 222, 110 Am. St. Rep. 400, 97 N. W. 613, 63 L. R. A. 791.)

In the case at bar the only showing of urgency for the appointment of a receiver was an affidavit that "there is immediate danger that the property and funds of the defendant corporation * * * will be lost, materially injured and unlawfully disposed of" if notice of the application were given. Such an averment is a mere conclusion, and is not competent evidence. And unless there is legal evidence of facts before the court, notice cannot be dispensed with. (*Benepe-Owenhouse Co.* v. *Scheidegger,* 32 Mont. 432, 80 Pac. 1024.)

When a quorum of the board of directors is present, notice of the meetings is presumed. (3 Thompson on Corporations, sec. 3934; *Wells* v. *Rodgers,* 60 Mich. 525, 27 N. W. 671; *Sargent* v. *Webster,* 13 Met. (Mass.) 497, 46 Am. Dec. 743; *Chase* v. *Tuttle,* 55 Conn. 455, 3 Am. St. Rep. 64, 12 Atl. 874.) In *Fitzgerald etc. Co.* v. *Fitzgerald,* 137 U. S. 98, 11 Sup. Ct. 36, 34 L. Ed. 608, it was held that a director was entitled to reasonable compensation upon an implied contract for services performed for the corporation as general manager, such duties being outside his duties as director. (Followed in *Bassett* v. *Fairchild,* 132 Cal. 637, 64 Pac. 1082, 52 L. R. A. 611.)

MR. JUSTICE SMITH delivered the opinion of the court.

On the second day of May, 1908, the district court of Lewis and Clark county, on motion of plaintiff, appointed a receiver for the defendant corporation without notice to the defendants. The order recited that it appeared to the court from the verified complaint and the affidavit of the plaintiff that a receiver should be appointed, and that the property and funds of the Jacobs Mercantile Company were "in danger of being lost, removed, and materially injured, and that there is immediate danger that the said property and funds will be lost, materially injured, or unlawfully disposed of by reason of the delay which will be necessary in order to give notice of the application for the appointment of said receiver." On May 4th the defendants made a motion to remove the receiver, and on May 5th amended the motion so as to ask that the order ap-

pointing the receiver be vacated.   The grounds of the motion in substance were that the complaint and affidavit did not state facts sufficient to justify the court in appointing the receiver. The plaintiff objected to the granting of the motion to vacate the appointment, but the court sustained the motion and discharged the receiver.   From that order plaintiff has appealed to this court.   On May 6th the plaintiff amended her complaint, and again moved the court for the appointment of a receiver.   Defendants filed a general demurrer to the amended complaint, and also a motion to dismiss the application for a receiver, on the grounds, among others, that the amended complaint failed to state a cause of action or any facts sufficient to justify the appointment of a receiver.   The court overruled the demurrer and the motion; whereupon testimony was introduced on the part of the plaintiff, after which the court refused to appoint a receiver, and plaintiff has appealed from that order also.   We shall hereafter give our reasons for holding that the court did not err in making this second order. Both appeals are included in one record, and were argued together.

It is contended by counsel for the appellant that the district court had no power or discretion to vacate the order appointing the receiver under the circumstances disclosed; that, having made the appointment upon the allegations of the complaint and affidavit, and no adverse showing having been made at the hearing, there was nothing to move the discretion of the court, and, therefore, the order should not have been interfered with.   We do not find it necessary to decide this point, for the reason that, immediately upon the first order being vacated, the plaintiff amended her complaint and made a second motion for the appointment of a receiver, and upon the hearing of that motion the facts of the case were disclosed to the court below.   The judge of that court, sitting as a chancellor, refused to again appoint a receiver, and, if such action was correct upon the facts shown, it would ill become this court, sitting as a court of review, to hold that the original

order, based upon a complaint and affidavit the allegations of which could not be substantiated, should be revived. We are inclined to the opinion that the plaintiff by making her second motion for the appointment of a receiver and showing the facts in the case, waived any right she may have had to claim that the court erred in vacating the first order, even assuming that she had, on paper, made allegations sufficient to entitle her to the appointment of a receiver without notice.

In the case of *Forrester* v. *Boston & Montana Co.*, 22 Mont. 430, 56 Pac. 868, the record showed that the district court had appointed a receiver for a corporation without notice. This order was at the time not an appealable one, but was affirmed on *certiorari*. (*State ex rel. Boston & Montana Co.* v. *District Court*, 22 Mont. 241, 56 Pac. 281.) The defendants afterward filed a supplemental answer showing, in effect, that the original grounds for the appointment of a receiver had been removed, and moved the court for an order vacating the order appointing the receiver. The district court denied the motion and defendants appealed from the order; the legislature having, in the meantime, provided for an appeal from such an order. Upon a motion made in this court for a stay of proceedings pending appeal, it was held that the court might consider the matters set forth in the supplemental answer, and an order was made requiring the receiver to restore the property and to take no further action with reference thereto. In the course of its opinion the court said: "Courts will protect minority shareholders against fraud or such gross mismanagement as amounts to fraud. Still, the cases where receivers are appointed are exceptional; and never on a slight and unsubstantial showing should a court continue a receivership for a solvent corporation, which has apparently removed all necessity for the control of its property by the court, and where every possible protection can be afforded a minority shareholder who feels aggrieved."

In the case of *Wetzstein* v. *Montana Ore Pur. Co.*, 25 Mont. 85, 63 Pac. 799, an injunction was asked for pending an action

in the district court to quiet the title in plaintiff to an interest in a certain mining claim, and for an accounting to plaintiff for his interests in the profits of said mining property, and for a receiver. It appeared from the complaint that in another action against the predecessors in interest of the defendants it had been determined that the plaintiff was not the owner of any interest in said mining claim, and the order of the court below denying an injunction *pendente lite* was affirmed.

In the case of *World Package, Express & Messenger Co.* v. *Trades Assembly et al.,* 24 Mont. 348, 61 Pac. 990, the district court made an order requiring the defendants to show cause on a certain day why an injunction should not issue as prayed, and requiring them to refrain from molesting plaintiff's business until a hearing could be had. On the hearing the court ruled that the complaint did not state a cause of action, and excluded certain testimony offered by the plaintiff. Thereupon the defendants asked leave to withdraw their affidavits and stand upon their answer alone, which leave was granted without objection. Whereupon the court on motion of defendants vacated the order to show cause and temporary restraining order. Plaintiff then asked and obtained leave to amend its complaint, and on the same day filed an amended complaint, and appealed from the order dissolving the restraining order and vacating the order to show cause. It was held that the plaintiff by failure to insist on a ruling as to the admissibility of its evidence and to object to the withdrawal of defendants' affidavits, and thereby allowing the question as to whether an injunction should issue to be submitted on the complaint and answer, waived the right to review the action of the trial court on appeal.

The plaintiff avers in her amended complaint that she is the owner of seven thousand four hundred and ninety-nine shares of stock in the defendant corporation, the Jacobs Mercantile Company; that Max Jacobs is the owner of one share, and the defendants Adolph Jacobs, Leopold Flatow, and Jennie Flatow own seven thousand five hundred shares; that the defendants

Adolph Jacobs and Leopold Flatow, together with Max Jacobs, constitute the board of directors of the corporation, and the defendant Jennie Flatow is the acting secretary-treasurer of said company; that the defendants Adolph Jacobs, Leopold Flatow, and Jennie Flatow, with intent to defraud the defendant corporation and its stockholders, on April 6, 1908, transferred to Jennie Flatow two certain lots belonging to the corporation, in the town of East Helena, of the value of $1,500, without consideration; that on the same day defendants fraudulently and without consideration transferred to Adolph Jacobs two other lots belonging to the corporation, of the value of $1,000; that the said defendants ever since the first day of December, 1907, have been wrongfully and unlawfully receiving the rents, issues and profits from said lots and converting the same to their own use; that the defendants Adolph Jacobs and Leopold Flatow, with intent to defraud the corporation and its stockholders, have heretofore voted themselves large and exorbitant salaries for their services to be rendered as directors in the future, and have voted themselves large and exorbitant sums as back salary; that at divers and sundry times since the first day of December, 1907, the defendants Adolph Jacobs and Leopold Flatow have misappropriated the funds of the defendant corporation by paying to themselves large sums of money belonging to the corporation in payment of their respective personal expenses without authority of the board of directors, and have wrongfully and unlawfully misappropriated the funds of the corporation by paying out the same in payment of fees and costs of litigation incurred in suits brought for their private interests; that said defendants have wrongfully and unlawfully converted to their own use large quantities of personal property belonging to the company; that the defendant Adolph Jacobs is indebted to the corporation in the sum of $1,700, and that Adolph Jacobs and Leopold Flatow, constituting a majority of the board of directors of the defendant corporation, refuse to take any steps for the collection of said sum, and, unless some action is promptly taken, said demand will become

barred by the statute of limitations and the money lost to the company; that the defendant Adolph Jacobs has left the state of Montana and is now in the state of California; that by reason of dissensions among the board of directors and their inability to agree, and by reason of dissensions and disagreements among the stockholders, the defendant corporation is manifestly unable to accomplish the purposes of its organization; that the defendants Adolph Jacobs, Leopold Flatow and Jennie Flatow, owning one-half of the capital stock of the company and constituting a majority of the board of directors, have wrongfully, unlawfully and fraudulently conspired together for the purpose of defrauding the remaining stockholders of the corporation by converting to their own use the funds and property of the corporation, thereby defrauding the remaining stockholders of the company, including the plaintiff, and making it impossible for the corporation to accomplish the purposes of its organization; that said defendants have wrongfully, unlawfully and fraudulently conspired together for the purpose of defrauding said corporation and its stockholders by willfully and intentionally mismanaging its affairs and business, thereby causing the corporation to lose money, and making it impossible for the company to pay any dividends upon its capital stock; that they have so conducted the business as to drive away the regular customers, and to decrease the amount of the business of the corporation to less than one-half of its original volume, and that the business for a long time past has been run at a large and constantly increasing loss, and the corporation is in imminent danger of insolvency; that the personal property of the corporation consists of a stock of general merchandise of the value of about $11,000, and the corporation is indebted to divers and sundry persons in the sum of more than $11,000, of which a large amount is due, and by reason thereof it is alleged that the defendant corporation is insolvent; that the company, in addition to the real estate transferred to Adolph Jacobs and Jennie Flatow, is the owner of certain other real estate in the town of East Helena, of considerable value when

used in connection with the business of the corporation, but of comparatively small value unless so used; that the defendants Adolph Jacobs and Leopold Flatow and Jennie Flatow threaten to unlawfully dispose of this real estate, and thereby defraud the corporation and its stockholders of the same; that they threaten to continue to misappropriate and convert to their own use the funds and personal property of the corporation; that there is immediate danger that the personal property of the defendant company will be lost, materially injured, and unlawfully disposed of, unless a receiver be appointed; that plaintiff has demanded of these defendants that they retransfer to the corporation the real property so taken over by them, and that they make an accounting to the corporation for the amounts owing by them and the property unlawfully taken by them, which demand has been refused; and that the plaintiff has demanded of said defendants an accounting and report of the affairs of the corporation, which demand has also been refused.

The following is the substance of the testimony produced by the plaintiff upon the hearing of her second motion for the appointment of a receiver: Max Jacobs testified that he is the husband of the plaintiff, brother of the defendants Adolph Jacobs and Jennie Flatow, and brother in law of the defendant Leopold Flatow. The corporation was organized on November 27, 1907, and at that time the witness, together with Adolph Jacobs and Leopold Flatow, were elected directors for the first three months. The assets of the Jacobs Mercantile Company formerly belonged to the estate of H. Jacobs, deceased. H. Jacobs was the father of Max Jacobs, Adolph Jacobs and Jennie Flatow. Max Jacobs was elected president of the Jacobs Mercantile Company when it was organized. At a meeting of the board of directors of which Max Jacobs had actual notice, although he claims that he received no legal notice, the salary of the manager was fixed at $150 per month, and that of the assistant manager at $125 per month. Adolph Jacobs was the manager and Leopold Flatow assistant manager. At a meeting of the board of directors held on March 7, 1908, of which

Max Jacobs had actual notice but was not present, he was removed as president of the corporation, the minutes reciting that he had arbitrarily and persistently refused to obey the orders of the board and had purchased goods for the company and incurred liabilities on behalf of the company without the authority of, and in direct conflict with, the order of the board, and had interfered with the operation of the business of the company, rescinded the orders issued by the board, and transferred the funds of the company from one bank to another without the authority of, and in direct conflict with, the orders of the board. The defendant Leopold Flatow was elected president in his place. It was also resolved at said meeting that "an effort be made to collect all balances due to this corporation, and that in the future the management of this company shall not carry any customer of this company for a balance, but that all bills must be paid on the 10th of each month for all goods sold during the previous month, or else that credit be discontinued to that customer immediately; that this rule be strictly adhered to; also that every effort to curtail the expenses to a minimum be put into force at once." It was also resolved that Max Jacobs, the postmaster, be given immediate notice to vacate the premises of the Jacobs Mercantile Company, and that Max Jacobs' authority to draw upon the funds of the company in the National Bank of Montana be withdrawn. It appeared that a man by the name of Cunningham, in the employ of Leopold Flatow, had taken a cord of wood of the value of about $6 belonging to the corporation to the home of Flatow, and that no charge against Flatow for said wood was found on the books of the company; that previous to the organization of the Jacobs Mercantile Company Max Jacobs was credited on the books of the company with the sum of $150 per month while he was in charge of the business of the estate of H. Jacobs, and that Leopold Flatow was credited with the sum of $125 a month for his services in connection with the same business; that the business of the Jacobs Mercantile Company had fallen off from one-third to one-half from that done

by H. Jacobs & Co. prior to the organization of the defendant company; that a great many people of East Helena have ceased to trade with the corporation, but whether on account of credit being refused them, dissensions in the Jacobs family, or dislike for the defendants does not clearly appear; that at the time of the commencement of this action the business was increasing somewhat in volume; that there are dissensions between the defendants on one side, and the plaintiff and her husband on the other, as to the manner of conducting the business, and there is considerable bad feeling between the parties to this action; that Adolph Jacobs had stated to one of the customers that they, the defendants, had one advantage, in this: that Max had to pay his own lawyer and their lawyers as well. The plaintiff offered to show by a witness that during the time that the business belonged to H. Jacobs & Co., the defendant Leopold Flatow had taken two ladies' skirts of the value of $5.50 each from the store, and had neglected to either pay for the same or charge them to himself. The court refused to admit this testimony, but we shall treat it as though it had been admitted. One of the clerks, who was secretary of a fraternal organization, testified that Leopold Flatow had instructed him to take the amount of his dues out of the cash drawer and leave the receipt therefor in lieu of the cash, that one month he took out $1.80 and left the receipt, and afterward the receipt was missing, and there was no charge on the books against Flatow for the amount; but the witness testified that as to whether Flatow had put the cash into the drawer when he took out the receipt he did not know. It was further shown that Adolph Jacobs had often stated before customers that the business was losing money, and that one of the attorneys for the defendant had been paid $100 out of the funds of the company; that Leopold Flatow had stated that Max would never become manager of the business again. The foregoing is practically all the testimony produced on the hearing.

It will be observed that the plaintiff first alleges that the Jacobs Mercantile Company is in imminent danger of becoming insolvent, and later that it is insolvent. The value of the real estate still owned by the company is not shown, so that we are unable to determine whether or not the corporation is insolvent. The matters of the cord of wood, the skirts, and the fees of the fraternal society are so trivial in character as that a court of equity would not be justified in attaching any importance to them, standing alone.

The defendants can be restrained from transferring to any third person the town lots taken over by them from the corporation, and from collecting any moneys from the company to which they are not entitled, pending the final determination of the action. The fact that the directors disagree among themselves as to whether the business should be conducted upon a cash basis or not is not sufficient to warrant the court in appointing a receiver. The stockholders voluntarily placed the business of the company in the hands of these directors, and so long as they act in good faith, their rights to control the business intrusted to them ought not to be taken away, even though there may be a question as to the expediency of their methods. The directors, when acting within the scope of their authority, are bound only to the exercise of good faith and the use of their best judgment in the conduct of the business. (*McConnell* v. *Combination M. & M. Co.*, 31 Mont. 563, 79 Pac. 248.)

We have carefully considered the testimony, and conclude that the district court did not abuse its discretion in refusing to appoint a receiver. As was said by the court in *Forrester* v. *Boston & Montana Co.*, *supra:* "The cases where receivers are appointed are exceptional." While it is doubtless true that a court of equity will appoint a receiver when the directors are putting in jeopardy the rights of the stockholders or creditors by grossly mismanaging the business or by misapplying the property or funds of the corporation (see 23 Am. & Eng. Ency. of Law, 1024), we do not think the evidence justifies the conclusion that any such conditions exist in this case.

In the case of *Fluker* v. *City Ry. Co.*, 48 Kan. 577, 30 Pac. 18, the court said: "The power of a court to appoint a receiver must be exercised with great care and the utmost caution, and with a due regard for the interests, as well as the legal rights of all parties sharing in the property." In the case of *Hickey* v. *Parrott S. & C. Co.*, 25 Mont. 164, 64 Pac. 330, this court said: "The power to appoint a receiver is to be exercised sparingly, and not as of course. A strong showing should be made, and even then the authority must be exercised with conservatism and caution." And again, in *Benepe-Owenhouse Co.* v. *Scheidegger*, 32 Mont. 424, 80 Pac. 1024: "The appointment of a receiver is an extraordinary remedy, to be resorted to only in case of emergency."

Mr. High, in his work on Receivers (third edition), section 3, says: "The power is justly regarded as one of a very high nature, and not to be exercised when it would be productive of serious injustice or injury to private rights. The exercise of the extraordinary power of a chancellor in appointing receivers, as in granting writs of injunction or *ne exeat,* is an exceedingly delicate and responsible duty, to be discharged by the court with the utmost caution, and only under such special or peculiar circumstances as demand summary relief. Indeed, the appointment of a receiver is regarded as one of the most difficult and embarrassing duties which a court of equity is called upon to perform. It is a peremptory measure, whose effect, temporarily at least, is to deprive of his property a defendant in possession before a final judgment or decree is reached by the court determining the rights of the parties. It is therefore not to be exercised doubtingly, but the court must be convinced that the relief is needful, and that it is the appropriate means of securing an appropriate end. And since it is a serious interference with the rights of the citizen, without the verdict of a jury and before a regular hearing, it should only be granted for the prevention of a manifest wrong and injury. And because it divests the owner of property of its possession before a final hearing it is regarded as a severe remedy, not to be adopted save in a clear case, and

never unless plaintiff would otherwise be in danger of suffering
irreparable loss.''

Both orders of the district court of Lewis and Clark county
are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY
concur.

