[L. A. No. 12386.  In Bank.—April 1, 1931.]

CHARLES LANTZ, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

214

Nathan Newby and Winslow P. Hyatt for Petitioner.

John R. Berryman, Jr., for Respondent.

THE COURT.—The petitioner seeks a review by this court of the order of the board of bar governors recommending his disbarment as an attorney at law in this state, which order was based upon findings that the charges brought against him by a complaint filed before the local administrative committee of Los Angeles County, by Harold Carlson, had been sustained. The basis of this complaint against petitioner involved his acts and conduct with relation to the property of Bertha Carlson Witt, sometimes known as Bertha Carlson and Bertha Schubert Witt, who was the mother of the said Harold Carlson, the complainant in said proceeding for disbarment.

The petitioner is an attorney at law with offices at Los Angeles, where he has resided and practiced law for the past forty years. He first met Mrs. Witt in April, 1920, at his office in connection with certain real property belonging to her and which had been purchased at a tax sale by a Mr. T. A. Davis, a cousin of petitioner residing at Goshen, Indiana, and whom the petitioner represented. It appears that at this time the affairs of Mrs. Witt were

in a tangled condition and she was in need of capital to prevent the loss of her equities. As a result of several conferences the petitioner undertook to straighten out Mrs. Witt's business entanglements by advancing money to clear her property of prior mortgages and liens and by furnishing to her legal advice and services. The first agreement between petitioner and Mrs. Witt, which was evidenced by four separate writings, was entered into on May 17, 1920, and provided as to certain of her property that petitioner should be entitled to one-half of the net proceeds "realized from the handling" thereof, as his compensation, and as to other portions petitioner was to receive certain stated amounts (which amounts presumably included the amounts advanced by him to clear title thereto) with interest on said respective amounts from the date of said expenditures, in payment of the money paid out by him and for services rendered. In none of these writings was there any provision or stipulation as to the disposition of the interest of Mrs. Witt in said property upon her death. Some time later, however, a further understanding was had between petitioner and Mrs. Witt, evidenced by writings signed by them on January 3, 1921, whereby he became the owner of the said property of Mrs. Witt and she made her will in his favor, on condition that he would provide for her support and maintenance during the balance of her life and would attend to the proper burial of her body upon her death. Petitioner on said date executed a writing in which he agreed to carry out said understanding, and two days later Mrs. Witt made a will in which the petitioner was named as the sole devisee. This arrangement between them continued up to the time of her death, which occurred on the sixth day of February, 1923, during which time and prior thereto petitioner acquired title to substantially all of the real property owned by Mrs. Witt, or in which she had any interest on the date when she first met petitioner. Thereafter, petitioner filed for probate the document executed by Mrs. Witt on the fifth day of January, 1921, as her last will and testament in which he listed the property of said decedent as certain personal property (describing it) of the estimated value of $250.

A contest to said petition was filed by the said Harold Carlson, the son of Mrs. Witt, which resulted in a verdict of a jury setting aside said will on the ground that the decedent was of unsound mind at the date it was purported to be executed, and upon the further grounds that it was procured through the fraud and undue influence of the petitioner upon said decedent. Prior to the rendition of the verdict, however, Harold Carlson was appointed special administrator of the estate of his mother and as such instituted an action against petitioner to have it decreed that petitioner held the legal title to the real property, formerly owned by Mrs. Witt, and then standing of record in the name of petitioner, as trustee for her legal representatives. This action resulted in a judgment in favor of the plaintiff therein as prayed for in his amended complaint.

An appeal was taken from the judgment of the trial court, in the proceeding brought by Harold Carlson to contest the document of January 5, 1921, purporting to be the last will of Mrs. Witt, and the same was affirmed by this court. (*Estate of Witt*, 198 Cal. 407 [245 Pac. 197].) An appeal was also taken by petitioner from the judgment of the trial court in which it was adjudged and decreed that petitioner held in trust the said real property formerly owned by Mrs. Witt, and this judgment was also affirmed by this court. (*Carlson* v. *Lantz*, 208 Cal. 134 [280 Pac. 531].) Reference is made to these decisions of this court for a more detailed statement of the facts and circumstances involved therein, and which in the main constitute the facts brought out at the hearing of petitioner before the local administrative committee and the board of bar governors, which we are now asked to review. At said hearing the record and evidence in the *Estate of Witt*, *supra*, were introduced in evidence, and substantially the same course was pursued regarding the record and evidence in *Carlson* v. *Lantz*, *supra*.

Two of the three members of the local administrative committee joined in a finding that "the accused has been guilty of unprofessional conduct, and recommends that he be severely reprimanded by the Board of Governors." The remaining member of the committee was of the opinion "that the accused had been guilty of unprofessional conduct, involving serious moral turpitude, and should be disbarred

therefor". The record of the proceeding before the local administrative committee, including a transcript of the evidence and the findings and recommendations of its members, were certified to the board of bar governors, whereupon a hearing was had before the board of bar governors, at which time the entire record of the hearing before the committee was reviewed by the board of bar governors. After argument of counsel for the accused, the matter was submitted for decision by said board, with the result that said board found, among other specific facts, that the accused, petitioner herein, while acting as the attorney of Mrs. Witt "obtained her confidence and fraudulently obtained title to all her property", and, furthermore, that the will executed by Mrs. Witt in which she disposed of all of her property to petitioner "was procured by the undue influence and fraud of the accused". The board of bar governors, basing the same upon its findings of fact, recommended that "the accused, Charles Lantz, be disbarred from the practice of law in this state". These findings and recommendation of the board of bar governors were not concurred in by the entire membership of the board. Two of said members voted against their adoption and one member was excused from voting.

From the briefs and arguments of counsel, as well as from the record before us, it is apparent that the principal question presented in this proceeding is whether the evidence is sufficient to show the commission by the petitioner of any act or acts involving moral turpitude, dishonesty or corruption. The State Bar Act does not purport to prescribe or establish any new grounds for disbarment but gives to the board of bar governors power to act in disbarment proceedings only "for any of the causes set forth in the laws of the state of California warranting disbarment". (State Bar Act, sec. 26.) The rule is different regarding suspension. (State Bar Act, sec. 29.) Section 287 of the Code of Civil Procedure sets forth the causes or grounds for which an attorney at law may be "removed or suspended". The fifth division of this section (the first four have no application to any question in this proceeding) provides in part for the removal or suspension of an attorney, "For the commission of any act involving moral turpitude, dishonesty or corruption. . . . " Unless there-

fore the evidence before us shows that the petitioner's acts and conduct were such that they involved moral turpitude, dishonesty or corruption, it would not be sufficient to warrant an order of disbarment or removal by this court. In contending for the insufficiency of the evidence in the respect above noted, petitioner asserts that the only charge made against him or of which he was found guilty was that of constructive fraud growing out of the relation of attorney and client which existed between Mrs. Witt and petitioner and that evidence which is only sufficient to establish constructive fraud falls short of proof of moral turpitude or dishonesty.

■ Moral turpitude, as defined by Bouvier, and approved by this court in the case of *Matter of Coffey*, 123 Cal. 522 [56 Pac. 448], comprises "everything done contrary to justice, honesty, modesty, or good morals". Petitioner accepts this definition as correct.

In the case of *Carlson* v. *Lantz, supra,* at page 139, this court, after holding that the relationship of attorney and client existed between petitioner and Mrs. Witt, and after reviewing the transactions between them, held, "There is sufficient evidence in the record to sustain the court's findings 'that in all· of the transactions between himself (petitioner) and Bertha Carlson (Mrs. Witt) as evidenced by various agreements between the said Charles Lantz and Bertha Carlson . . . , the said Charles Lantz was seeking his own advantage rather than that of Bertha Carlson'. The evidence fully supports the finding that an advantage was gained by the defendant. If the advantage be gained, then the burden is upon the defendant to show that the transactions were fair and that the parties dealt at arm's length, and unquestionably the defendant has not sustained that burden."

■ We are in entire agreement with the foregoing statement from our former opinion after reviewing the evidence as presented to us in the present record. This evidence presents the case of an attorney who in dealing with his client has gained an advantage over the latter, and who after a full and exhaustive hearing wherein every opportunity was given to him to show the nature of the transaction between himself and his client has failed to satisfactorily show that it was fair and just. That such a

transaction, in so far as the acts and conduct of the attorney are connected therewith, is one against good morals, if not absolutely dishonest, we entertain no doubt. For an attorney to treat his client unfairly and thereby gain an advantage over the latter is a species of dishonesty which has always met with the severest censure and condemnation by the courts and by the general public. Any such transaction involves moral turpitude on the part of the attorney, and evinces on his part a dishonest purpose to acquire the property of his client. The authorities cited by the petitioner to the effect that fraud is never presumed, but must be established by clear, unequivocal and convincing proof contain a correct statement of the law upon the subject of fraud, but they have no application to the facts in the present case, where it appears that after a number of most searching investigations in which the petitioner was given every opportunity to prove the integrity of his conduct toward his client, every court or tribunal to whom the evidence was submitted, whether in the first instance or on appeal, condemned his conduct as unjust and unfair to his client.

While we are concerned at the present time only with the evidence brought out before the local administrative committee before which the charges of disbarment against petitioner were made, we hardly think that we should overlook the verdict of the jury in the will contest case, and the findings of the court in *Carlson* v. *Lantz, supra,* as well as our own decisions affirming the order and judgment in those proceedings. Yet if we lay aside these determinations on prior hearings, and direct our attention solely to the evidence brought out before the aforesaid local administrative committee, we are forced to the conclusion that petitioner's conduct in dealing with Mrs. Witt was most unfair and resulted in the petitioner acquiring an unconscionable advantage over her. Such conduct was manifestly not in accordance with good morals or honest dealings. In our opinion, this conduct of the petitioner clearly involved moral turpitude and dishonesty on his part. It would, therefore, demand an order of disbarment were it not for certain mitigating circumstances which the evidence shows should, in fairness to all parties, be taken

into consideration in meteing out just punishment to the accused.

The evidence shows without any contradiction that at the time Mrs. Witt came to petitioner in the first instance, her property was badly involved, and that unless she secured sound business advice and adequate financial assistance all of her property would be lost to her and she would be left penniless. She had previously tried Borden but her experience with him brought her no relief. She interceded with Mrs. Colkins, but however willing the latter and her husband were to help Mrs. Witt, their resources were limited and on the death of Mr. Colkins, his widow was entirely without means to render the necessary assistance. Neither of the two sons of Mrs. Witt was able to render her any financial assistance. It is, therefore, apparent from the evidence that Mrs. Witt would not only have died a pauper but her last days would have been spent in poverty and want had not petitioner come to her rescue and advanced from his own funds money to preserve her property and to support and maintain her during the last years of her life. As a result of petitioner's efforts in this respect valuable property belonging to Mrs. Witt was preserved from loss and she lived in comparative ease and comfort from that time until the time of her death. To this extent, petitioner's conduct was commendable, and while it did not justify him in appropriating to himself all of her property, it should mitigate the punishment which this court is vested with the power to mete out to him.

Under all of the facts and circumstances of this case, we do not feel justified in imposing upon him the extreme measure of our power and to deprive him permanently of the right to practice law. We are satisfied that a lesser punishment would more justly meet the situation presented to us by all the evidence before us. After much reflection we have decided that a year's suspension of the petitioner from the practice of law would be adequate punishment to be inflicted upon him, and will be a sufficient deterrent to others who might in the future be tempted to commit similar transgressions.

Two other matters require brief discussion before closing this opinion. One is presented by the respondent,

the board of bar governors, in which the board contends that the petitioner attempted to practice fraud upon the court in filing his petition for letters of administration (evidently letters testamentary were intended) in which he formerly alleged that the estate consisted only of personal property of the value of $250. There is no evidence in the record in our opinion that would justify us in sustaining this contention. It is true that petitioner filed a petition for letters testamentary in which he set forth that the only property left by the deceased was personal property of the value of $250. It is also true that the court in *Carlson* v. *Lantz, supra,* found and held that Mrs. Witt at the time of her death was at least the equitable owner of certain real property, the legal title to which stood in petitioner's name. But in that action petitioner contended from the first and through the entire pendency of said action until it was finally decided by this court that Mrs. Witt owned no interest in said real property, but that he was the sole owner thereof. He made no effort to do away with or conceal any of said property. It stood upon the public records in his name, open to the inspection of any interested person. We think the great preponderance of the evidence in this case shows that petitioner considered and thought that he was the owner of said real property. If so, then there was no fraud in representing to the court in his petition for letters testamentary that the estate of decedent consisted simply of certain personal property of the value therein given and as described therein.

The other matter referred to above is brought before us by petitioner, and is that the accusation, which as we have seen, was written and ·sworn to by complainant, was not properly verified by said complainant. This objection was first made by petitioner in his brief filed after argument before this court. The objection we think is not well taken. The verification herein is in the form prescribed by section 446 of the Code of Civil Procedure, which deals with the verification of pleadings in general and sets out in exact language the proper form. Moreover, the charges of the accusation are made positively and none of them are made upon information and belief. This being so, the verification is to be regarded as a positive affirm-

ance of the truth of the allegations therein, notwithstanding the use of the form of verification containing the words "except as to the matters therein stated on his information and belief" (*Christopher* v. *Condogeorge*, 128 Cal. 581 [61 Pac. 174, 175]; *Lassen* v. *Board of Dental Examiners*, 24 Cal. App. 767 [142 Pac. 505]). *Matter of Hotchkiss*, 58 Cal. 39, and *In re Hudson*, 102 Cal. 467 [36 Pac. 812], relied upon by petitioner, are not applicable to the instant case for the reason that in each of those cases the allegations of the accusation itself were made upon information and belief.

In accordance with the views already expressed, it is hereby ordered that the petitioner Charles Lantz be and he is hereby suspended from the practice of law in this state for the period of one year from the date of the filing of this order.

Rehearing denied.